PHILLIP B. FISK AND CAROL FISK, Plaintiffs v. CHARLES R. MURPHY AND REPUB-
LIC SERVICES OF NORTH CAROLINA, LLC, Defendants

No. COA10-892

(Filed 21 June 2011)

**Negligence— contributory—collision at intersection—limited sight distances—failure to reduce speed or keep proper lookout**

The trial court did not err by submitting to the jury the issue of contributory negligence in an action arising from the collision of a motorcycle on the dominant road with a pickup truck on the servient road, with both drivers having limited sight distances. A jury could conclude from the evidence that circumstances existed that would reasonably put plaintiff on notice that he could not assume that the other driver would yield at the intersection.

Appeal by Plaintiffs from Judgment entered 27 October 2009 and Order entered 21 December 2009 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 15 December 2010.

*McLean Law Firm, P.A., by Russell L. McLean, III, and Lisa A. Kosir, PLLC, by Lisa A. Kosir, for Plaintiffs-appellants.*

*York Williams & Lewis, LLP, by Thomas E. Williams and David R. DiMatteo, for Defendant-appellee Charles R. Murphy.*

*Law Offices of H.M. Whitesides Jr., by H.M. Whitesides, Jr., and Ryan Law PLLC, by Stephanie S. Ryan, for Defendant-appellee Republic Services of North Carolina, LLC.*

HUNTER, JR., Robert N., Judge.

Phillip B. Fisk and Carol Fisk ("Plaintiffs") appeal from the entry of Judgment denying Plaintiffs recovery from Charles R. Murphy and Republic Services of North Carolina, LLC ("Defendants") and the subsequent Order denying their Motion for Judgment Notwithstanding the Verdict and Motion for New Trial. We affirm the trial court's Judgment and Order.

## I. Factual & Procedural Background

This action arises out of a collision that occurred on 15 September 2005 at approximately 10:15 a.m. at the intersection of Glenn Bridge Road and Old Shoals Road in Asheville, North Carolina. Plaintiff Phillip Fisk ("Fisk") was riding his motorcycle east on Glenn Bridge Road when he collided with Defendant Charles Murphy's ("Murphy") pickup truck traveling north on Old Shoals Road. Murphy worked for Defendant Republic Services of North Carolina, LLC ("Republic") and he was on a job-related activity at the time of the collision.

At the site of the collision, Fisk was traveling on Glenn Bridge Road, the dominant road, which was equipped with a continuously flashing yellow caution light and a sign that read "Vehicles Entering When Flashing." Murphy was traveling on Old Shoals Road, the servient road, which was equipped with a stop sign located approximately 50 feet prior to the intersection. Additionally, a flashing red light faces Old Shoals Road and is designed to flash when triggered by a vehicle passing over a sensor on Glenn Bridge Road, located approximately 300 feet from the center of the intersection. Plaintiffs' expert witness, Michael Sutton ("Sutton"), testified that the flashing light system was installed at this intersection because of the limited sight distance at the intersection.

Fisk did not testify at trial, although his deposition was read into evidence during the trial. In his brief, Fisk concedes that he traveled Glenn Bridge Road on a regular basis and was familiar with the intersection. Fisk, however, has no memory of the collision. His last memory prior to the accident was of passing a business located approximately 200 yards before the intersection.

**FISK v. MURPHY**

[212 N.C. App. 667 (2011)]

Murphy, the only witness to the accident to testify, stated that he came to a complete stop at the stop sign on Old Shoals Road and looked to his left and his right, did not see Fisk, and "eased" through the intersection. As Murphy crossed Glenn Bridge Road, he heard the squeal of tires and, in response, pressed the accelerator and pulled the steering wheel to the right, but was unable to avoid the collision. At the point of impact, Murphy's four-door pickup truck was straddling the double yellow line of Glenn Bridge Road. Fisk's motorcycle struck Murphy's truck on the driver's side at a point behind the four-door passenger compartment, but immediately in front of the rear tire well.

Trooper Robert Baker of the North Carolina Highway Patrol responded to the scene of the accident. Trooper Baker testified that there were no gouge or skid marks in the roadway.

Fisk and his wife, Carol Fisk, filed this action 6 August 2008 alleging, *inter alia*, negligence by Defendants Murphy and Republic. Murphy and Republic pled the affirmative defense of contributory negligence by Fisk for failing to keep a proper lookout, to maintain proper control, or to otherwise operate his motorcycle in a safe manner.

The case was tried before a jury in the 2009 Civil Session of Buncombe County Superior Court. The jury returned a verdict finding Defendant Murphy negligent and Plaintiff Fisk contributorily negligent. Accordingly, Judge James U. Downs entered a Judgment on 27 October 2009 barring Plaintiffs recovery of damages or costs from Defendants.

On 6 November 2009, Plaintiffs filed a Motion for Judgment Notwithstanding the Verdict and, in the alternative, a Motion for New Trial pursuant to the Rules of Civil Procedure 50(b)(1) and 59, respectively, for, *inter alia*, lack of sufficient evidence of contributory negligence. After a hearing on the Motions, Judge Downs entered an Order on 21 December 2009 denying Plaintiffs' Motions. Plaintiffs timely gave notice of appeal.

## II. Jurisdiction & Standard of Review

Plaintiffs appeal from the final judgment of a superior court and appeal lies of right with this Court pursuant to N.C. Gen. Stat. § 7A-27(b)' (2009). We review the trial court's denial of a motion for judgment notwithstanding the verdict *de novo. Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 342, 658 S.E.2d 1, 4, *disc. review denied*, 362 N.C. 469, 665 S.E.2d 737 (2008). We must determine "whether upon examination of all the evidence in the light most favorable to

the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Id.* (citation and quotation marks omitted). Furthermore, if there is more than a "scintilla of evidence" supporting each element of the nonmoving party's claim, the motion should be denied. *Id.*

Our review of a trial court's ruling on a motion for a new trial pursuant to Rule 59 is "strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion." *Worthington v. Bynum,* 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). The party alleging such abuse bears a heavy burden, as "an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

### III. Analysis

As Defendants have not appealed the verdict finding Murphy negligent, the only issue on appeal is whether Fisk was contributorily negligent. Plaintiffs' sole argument is that there was insufficient evidence to submit the issue of contributory negligence to the jury. We disagree.

Contributory negligence "is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." *Jackson v. McBride,* 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967). In order to establish that Fisk was negligent, Defendants must establish that (1) Fisk demonstrated a lack of due care and (2) there was a proximate connection between Fisk's negligence and his injury. *See Whisnant v. Herrera,* 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004) (explaining the two elements necessary for establishing contributory negligence). If Defendants presented more than a "scintilla of evidence" of these two elements, the trial court did not err in denying Plaintiffs' Motions. *See id.* (quoting *Snead v. Holloman,* 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991)).

When considered in the light most favorable to the Defendants, the evidence tends to show the following facts. The intersection provided limited sight distance for drivers traveling from the directions Fisk and Murphy were traveling. Murphy came to a complete stop and looked both ways before "eas[ing]" into the intersection. Fisk was

familiar with the intersection as he traveled through it on a nearly daily basis. Fisk's direction of travel was governed by a flashing yellow light and sign that warned of other vehicles entering the intersection. At the point of impact, Murphy's truck was straddling the double yellow line in the middle of the intersection. Fisk's motorcycle struck the rear portion of Murphy's truck.

Our Supreme Court has recognized that

> [o]rdinarily a person has no duty to anticipate negligence on the part of others. In the absence of anything which gives or should give notice to the contrary, he has the right to assume and to act on the assumption that others will observe the rules of the road and obey the law. However, the right to rely on this assumption is not absolute, and if the circumstances existing at the time are such as reasonably to put a person on notice that he cannot rely on the assumption, *he is under a duty to exercise that care which a reasonably careful and prudent person would exercise under all the circumstances then existing.*

*Penland v. Green,* 289 N.C. 281, 283, 221 S.E.2d 365, 368 (1976) (citations omitted) (emphasis added) (*cited with approval in Whisnant,* 166 N.C. App. at 723, 603 S.E.2d at 850). In the present case, we conclude circumstances existed that should have put Fisk on notice that others may not observe their duty of care and he failed to respond accordingly.

Specifically, Fisk's direction of travel was governed by a flashing yellow light, which required him to yield to traffic approaching or already in the intersection. N.C. Gen. Stat. § 20-158(b)(4) (2009) ("When a flashing yellow light has been erected or installed at an intersection, approaching vehicles facing the yellow flashing light may proceed through the intersection with caution, *yielding the right-of-way to vehicles in or approaching the intersection.*" (emphasis added)). At the point of impact, Murphy's truck was straddling the double yellow line in the middle of the intersection and Fisk's motorcycle struck Murphy's truck at a point on the rear-half of the vehicle. "Where the driver on the servient street is already in the intersection before the vehicle approaching on the dominant street is near enough the intersection to constitute an immediate hazard, the driver on the servient street has the right-of-way." *Farmer v. Reynolds,* 4 N.C. App. 554, 561, 167 S.E.2d 480, 485 (1969).

**FISK v. MURPHY**

[212 N.C. App. 667 (2011)]

Plaintiffs place great emphasis on the testimony of their expert witness, Sutton, arguing his testimony established that Fisk's actions could not support a finding of contributory negligence. We disagree.

Sutton, qualified by the trial court as an expert in accident reconstruction, testified for Plaintiffs as to the results from his reconstruction of the accident under different variables. Sutton concluded that under each scenario he tested, Fisk did not have sufficient time to avoid the collision. The record reveals, however, multiple inconsistencies in Sutton's testimony that would permit a jury to reach a different conclusion.

Sutton's multiple reconstruction scenarios differed by varying the assumed speeds of Fisk and Murphy and the distance from the intersection at which Murphy came to a stop. The result of each scenario produced an estimate of the sight distance each driver had of oncoming traffic and an estimate of the number of seconds Fisk had to avoid the collision. Because the stop sign in Murphy's direction of travel was located 50 feet from the intersection, there was a great deal of testimony as to where Murphy came to a stop—at the stop sign, at the intersection, or at some point in between. When Sutton assumed Murphy stopped at a point in between the stop sign and the edge of the intersection—as Murphy testified in court that he did—then both Fisk and Murphy would have been able to see over 700 feet of the road leading up to the point of the collision. Traveling at 35 miles per hour (approximately 51 feet per second), the highest rate of speed Sutton assumed Fisk was traveling, Fisk would have had approximately 14 seconds to perceive Murphy's truck. Sutton insisted, however, that Fisk had less than one second to perceive Murphy's truck as a hazard and attempt to avoid the collision:

> From the reconstruction of the accident, the pickup truck, *from a bunch of different scenarios, is in the lane of travel for less than one second.*
>
> So in this accident, to boil it all down, what you're looking at is is [sic] that this pickup truck would have been a hazard to the motorcycle rider in basically about the time it takes him to perceive and react to it, which doesn't leave him any time to brake. (Emphasis added.)

Sutton's conclusion ignores the possibility that Fisk could have perceived Murphy's truck as a hazard and responded accordingly *before* Murphy was in Fisk's lane of travel. A jury could readily discern this

discrepancy in Sutton's testimony and conclude Fisk had sufficient time to see Murphy's truck and avoid the collision.

In fact, Sutton further testified that Fisk had an opportunity to decide whether he was in danger of colliding with Murphy's truck before Murphy entered the intersection:

> [B]efore the pickup truck crosses the motorcycle's lane of travel, at some point in time Mr. Fisk *would have been able to see that pickup truck moving towards the road.*
>
> . . . .
>
> And so you have to make a decision, if you're Mr. Fisk, is that vehicle just approaching the road to stop? Is he moving up to the intersection slowly and is going to stop again? (Emphasis added.)

This testimony provides more than a scintilla of evidence that Fisk was negligent and his negligence contributed to his own injuries. From this evidence, a jury could conclude circumstances existed that would reasonably put Fisk on notice that he could not assume Murphy would yield at the intersection. Thus, it was proper to put to the jury the issue of whether Fisk was negligent for failing to reduce his speed, keep a proper lookout, or maintain control of his motorcycle such that it contributed to his injuries.

## IV. Conclusion

For the reasons stated above, we conclude the trial court did not err in putting before the jury the issue of whether Fisk was contributorily negligent in causing his own injuries. The trial court did not err in denying Plaintiffs' Motion for Judgment Notwithstanding the Verdict, nor abuse its discretion in denying Plaintiffs' Motion for New Trial. The trial court's Judgment and Order are

Affirmed.

Judges STEELMAN and STEPHENS concur.